COMMONWEALTH vs. OSCOE HOUSEN.

No. 11-P-1798.

Middlesex. November 7, 2012. - January 25, 2013.

Present: KANTROWITZ, BERRY, & GRAINGER, JJ.

*Armed Assault with Intent to Murder. Abuse Prevention. Practice, Criminal,*
Duplicative convictions, Lesser included offense.

At a criminal trial, the defendant's convictions of multiple violations of an
abuse prevention order were not duplicative, where the defendant initially
violated the order when he approached his former girlfriend in the parking
lot of her workplace and then, after going to her home, committed ad-
ditional and distinct violations of the order by failing to leave the home on
each occasion that one of her three minor children (all of whom were
listed on the order) arrived at the house. [176-177]

At a criminal trial, the defendant's conviction of violation of an abuse preven-
tion order was not, in itself, a lesser included offense of assault and battery
in violation of that abuse prevention order, where it is possible to commit
assault and battery on a person while simultaneously violating an abuse
prevention order by failing to obey a stricture unrelated to the physical at-
tack, and such a stricture, in turn, can supply an element that is not required
to prove the assault and battery charge. [177-178]

At a criminal trial, the evidence was sufficient to convict the defendant of
armed assault with intent to murder. [178]

At the trial of indictments charging the defendant with multiple violations of
an abuse prevention order, the evidence was sufficient to prove that the
defendant left the property in question and then reentered it later. [178-179]

At a criminal trial, the judge did not err or abuse her discretion in admitting in
evidence testimony concerning previous acts of violence committed by the
defendant against the victim, where the evidence was relevant to the
defendant's state of mind, motive, and intent, and where the evidence was
accompanied by an appropriate limiting instruction. [179]

INDICTMENTS found and returned in the Superior Court Depart-
ment on February 23, 2010.

The cases were tried before *Elizabeth M. Fahey*, J.

*Matthew Bové* for the defendant.

*Casey E. Silvia*, Assistant District Attorney (*Kerry A. Collins*,
Assistant District Attorney, with her) for the Commonwealth.

Commonwealth *v.* Housen.

GRAINGER, J. The defendant was convicted by a jury in the Superior Court on thirteen indictments arising out of his attack with a knife on his former girlfriend, Mary Smith,[1] and her male friend. On appeal, the defendant argues, inter alia, that (1) the evidence was insufficient to support his convictions of armed assault with intent to murder, (2) his convictions of multiple counts of violating a G. L. c. 209A abuse prevention order[2] are duplicative because they resulted from "an unbroken course of conduct," and (3) one of the convictions of violating a G. L. c. 209A abuse prevention order is duplicative as a lesser included offense of assault and battery in violation of an abuse prevention order under G. L. c. 265, § 13A(*b*)(iii).

*Background.* We recite the facts relevant to the issues on appeal as the jury could have found them during the trial. The defendant began dating Smith in 2001. The relationship was intermittently violent. In 2008, after Smith expressed her desire to end the relationship, the defendant assaulted her with a hammer and threatened to kill himself. In 2009, Smith obtained an abuse prevention order (order) after the defendant sent her threatening letters. The order forbade the defendant from coming within fifty yards of Smith or any of her three minor children, ordered the defendant to refrain from abusing Smith, and ordered him to stay away from Smith's place of work and residence. The order was still in place on January 4 and 5, 2010.

On January 4, 2010, Smith encountered the defendant in the parking lot at her work. She felt sorry for the defendant, who said he was cold and hungry, and drove him to her home around 3:00 P.M. Thereafter, between 4:00 P.M. and 5:00 P.M., each of Smith's three children arrived home separately. Later in the evening, Smith became scared of the defendant and asked him to leave. The defendant refused. Smith called a friend, Richard Milburn, who arrived and escorted the defendant from the home at approximately 12:30 A.M. Milburn saw the defendant cross

---

[1] A pseudonym.

[2] Specifically: one count (numbered 14) for contacting Smith at her place of work on January 4, 2010, three counts (numbered 7, 10, and 12) for contacting each of Smith's minor children at her home on January 4, 2010, three counts (numbered 8, 9, and 11) for contacting each minor child upon reentering the home on January 5, 2010, and one count (numbered 13) for contact with Smith upon reentering her home on January 5, 2010.

the street and go "on about his business." Approximately four hours later, the defendant reentered Smith's home and attacked Smith and Milburn with a kitchen knife while they were sleeping. The knife was twelve inches in length overall, including a seven-inch blade.

*Discussion.* 1. *Continuing violations.* The defendant argues that his violation of the order occurred when he initially contacted Smith in the parking lot of her place of employment, and that his subsequent commission of other acts prohibited by the order (specifically, contact with each child) does not support additional convictions because he simply continued to violate the same order. This approach emphasizes the zone of protection around Smith's home and workplace created by the order, and deemphasizes the importance of each individual the order seeks to protect. We decline to adopt this view of the abuse prevention statute.

Chapter 209A's primary goal is to protect individuals from abuse.[3] The so-called zone of protection is a mechanism created for the protection of one or more individuals, not for the protection of a residence or job site. Further and independently, the law's focus on protected individuals requires a defendant subject to an abuse prevention order to vacate a public area when he encounters the plaintiff or plaintiffs. See *Commonwealth* v. *Finase*, 435 Mass. 310, 315 (2001); *Commonwealth* v. *Kendrick*, 446 Mass. 72, 76 (2006); *Commonwealth* v. *Raymond*, 54 Mass. App. Ct. 488, 494 (2002); *Commonwealth* v. *Stoltz*, 73 Mass. App. Ct. 642, 646 (2009).

The requirements for the issuance of a protective order place the burden on the plaintiff to prove, by a preponderance of the evidence, that he or she is suffering from abuse as defined in G. L. c. 209A. See *Frizado* v. *Frizado*, 420 Mass. 592, 596-597 (1995). A plaintiff seeking an order on the basis of abuse must show that he or she is currently "in fear of 'imminent serious physical harm,' " as well as that the fear is reasonable. *Dollan*

---

[3]As we have frequently observed, "c. 209A provides a statutory mechanism by which *victims* of family or household *abuse* can enlist the aid of the State to prevent further abuse" (emphasis added). See *Corrado* v. *Hedrick*, 65 Mass. App. Ct. 477, 481 (2006), quoting from *Commonwealth* v. *Gordon*, 407 Mass. 340, 344 (1990).

v. *Dollan*, 55 Mass. App. Ct. 905, 906 (2002), quoting from G. L. c. 209A, § 1(*b*).

In light of the statute's goal of protecting each individual listed in the order, it was sustainable for the Commonwealth to charge the defendant with multiple counts of violating the order. The defendant correctly concedes that he initially violated the terms of the order when he approached Smith in the parking lot of her workplace. The fact remains that, after going to her home, he had an affirmative duty to leave the premises on each occasion that one of the three minor children arrived at the house. His duty, established by the terms of the order, was not diminished or eliminated because he was already in the house or because other individuals whom the order seeks to protect were already present. By failing to leave, the defendant committed additional and distinct violations of the order.

2. *Lesser included offense.* The defendant argues that his conviction of violation of the order for assaulting Smith after his return to the house on January 5, 2010 (count 13) must be overturned because it was a lesser included offense of his conviction of assault and battery in violation of an abuse prevention order under G. L. c. 265, § 13A(*b*)(iii) (count 6).

In determining whether one offense is a lesser included offense of another for double jeopardy purposes, we apply the "long-prevailing test in this Commonwealth[, which] is whether each crime requires proof of an additional fact that the other does not." *Commonwealth* v. *Crocker*, 384 Mass. 353, 357 (1981), quoting from *Commonwealth* v. *Jones*, 382 Mass. 387, 393 (1981). See *Morey* v. *Commonwealth*, 108 Mass. 433, 434 (1871). "If so, neither crime is a lesser included offense of the other." *Commonwealth* v. *Crocker*, *supra*, quoting from *Commonwealth* v. *Jones*, *supra*.

Undeniably, G. L. c. 265, § 13A(*b*)(iii), prohibiting assault and battery in violation of an abuse prevention order, contains an element — assault and battery — not necessary to secure a conviction simply of violation of a c. 209A order. In order also to prove the converse, the Commonwealth asserts that it did not need to prove that the defendant violated the order in order to secure a conviction of assault and battery in violation of the

order. Thus, according to the Commonwealth, each offense includes an element that the other does not.

General Laws c. 265, § 13A(b)(iii), does not require the explicit identification of every element of the criminal offense that must be proved separately by the Commonwealth.[4] Inevitably, an assault and battery upon a person covered by an abuse prevention order will result in a violation of the order. However, it is possible to violate an abuse prevention order in myriad ways, so that a defendant can commit assault and battery on a person while simultaneously violating an abuse prevention order by failing to obey a stricture unrelated to the physical attack. That stricture, in turn, can supply an element that is not required to prove the assault and battery charge. We therefore reject the defendant's argument that violation of a c. 209A order is, in itself, a lesser included offense of assault and battery in violation of an abuse prevention order.[5]

3. *Other claims.* The defendant argues that the allegedly superficial nature of the wounds he inflicted on Smith and Milburn provided insufficient evidence for a conviction of armed assault with intent to murder. He attacked his victims, initially defenseless as they were asleep, with a foot-long kitchen knife featuring a seven-inch blade. His inability to inflict greater damage, whatever the reason he now invokes, does not amount to insufficiency under the familiar *Latimore* standard. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979).

The defendant also asserts that the convictions of violations of the order based on his reentry into the house on January 5, 2010 were duplicative because there was insufficient evidence that he actually left the property. This argument is likewise unavailing; there was evidence in the record from which the

---

[4]Under the language of the statute, the Commonwealth must prove that the defendant committed "an assault and battery . . . upon another who he knows has an outstanding temporary or permanent [abuse prevention order] . . . in effect against him at the time of such . . . assault and battery." G. L. c. 265, § 13A(b)(iii), as amended through St. 2002, c. 35, § 1.

[5]The defendant did not preserve any claim of error related to the judge's instruction charging the jury with deciding whether the defendant "violated the order by abusing or contacting" Smith and her children. The defendant also did not argue on appeal that the instruction as delivered permitted conviction on both charges for the same act. Accordingly, we do not address these issues. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

jury could have found that the defendant left the protected fifty-yard zone and then reentered it some four hours later.

Finally, the defendant asserts abuse of discretion in the judge's allowance in evidence of testimony concerning previous acts of violence committed by the defendant against Smith, and in the denial of his motion for a mistrial based on the prosecutor's closing argument. Evidence of prior bad acts was properly admitted as relevant to the defendant's state of mind, motive, and intent, and was accompanied by an appropriate limiting instruction. The prosecutor's reference to one such incident in her closing was likewise proper, and we assign no prejudice to the accompanying minor misstatement which mischaracterized the actual conversation leading up to the prior attack.[6] There was no error.

To the extent that we do not address these or other contentions in greater detail, "they 'have not been overlooked. We find nothing in them that requires discussion.' " *Department of Rev.* v. *Ryan R.*, 62 Mass. App. Ct. 380, 389 (2004), quoting from *Commonwealth* v. *Domanski*, 332 Mass. 66, 78 (1954).

*Judgments affirmed.*

---

[6]The prosecutor stated that Smith told the defendant she was seeing someone else, while the actual testimony was that she told him she wanted to end their relationship.